MICHAEL J. GARCIA
United States Attorney for the
Southern District of New York
By: WENDY H. WASZMER (WW5069)
Assistant United States Attorney
86 Chambers Street
New York, New York  10007
Tel.: (212) 637-2729
Fax: (212) 637-2717

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- x

WAYNE COVER,

                 Plaintiff,          :    ECF CASE

                    v.          :    05 Civ. 7039 (GAY)

JOHN E. POTTER, Postmaster General,    :    DEFENDANT JOHN E. POTTER'S
United States Postal Service,            :    <u>LOCAL RULE 56.1 STATEMENT</u>

               Defendant.   :

------------------------------------------------------- x

       Pursuant to Civil Rule 56.1 of the Local Rules of the United States District Court for the

Southern District of New York, defendant John E. Potter, Postmaster General of the United States

Postal Service ("defendant" or "the Postal Service"), states that there is no genuine issue to be tried

with respect to the following material facts:

<b>The Collective Bargaining Agreement Between the Postal Service<br>and the American Postal Workers Union, AFL-CIO, and Policies Regarding Employee<br>Discipline</b>

       1.    Section 1(A) of Article 7 of the Collective Bargaining Agreement between the Postal

Service and the American Postal Workers Union, AFL-CIO, 2000-2003 (the "CBA" or the "National

Agreement") states that "part-time" employees "shall be hired pursuant to such procedures as the

Employer may establish and shall be assigned to regular schedules of less than forty (40) hours in a

service week, or shall be available to work flexible hours as assigned by the Employer during the course of a service week."  Declaration of Wendy H. Waszmer ("Waszmer Decl."), dated January 26, 2007, Ex. F, at 18-23.

2.    Article 16 of the CBA ("Discipline Procedure") outlines the procedures regarding the issuance of employee discipline.  Article 16 states, in relevant part:

> In the administration of this Article, a basic principle shall be that discipline should be corrective in nature, rather than punitive.  No employee should be disciplined or discharged except for just cause, such as, but not limited to insubordination, pilferage, intoxication (drugs or alcohol), incompetence, failure to perform work as requested, violation of the terms of this Agreement, or failure to observe safety rules and regulations.

Waszmer Decl., Ex. F, at 109-110.

3.    Section 3 of Article 16 sets forth the categories of discipline recognized under the CBA, which include a letter of warning, suspension of fourteen (14) days or less, suspension for more than fourteen (14) days, indefinite suspension, and discharge. Id. at 110-111.  A letter of warning is defined as a "disciplinary notice in writing, identified as an official disciplinary letter of warning, which shall include an explanation of a deficiency or misconduct to be corrected."  Id. at 110.

**Plaintiff's Employment with the Postal Service**

4.    Plaintiff, an African-American male, became a part-time flexible mail processor for the Postal Service in November 1997.  See Waszmer Decl., Ex. A (Deposition Transcript of Wayne Cover ("Cover Tr.")), at 49-50.  Plaintiff was initially assigned to the White Plains Post Office.  Waszmer Decl., Ex. B.  As a part-time flexible mail processor at the White Plains Post Office, plaintiff was assigned to work on a delivery bar code sorter ("DBCS") machine.  Cover Tr., at 50-51.

2

5.   DBCS machines are used to sort mail into delivery point sequence ("DPS") to be distributed to mail carriers for delivery.  Id. at 55-58; Bland Tr., at 101-03.  In order to sort the mail into the proper sequence, the mail is fed into the DBCS machine in two "passes."  Cover Tr., at 55-58. The first pass prepares the mail to be sequenced, and the second pass puts the letters into DPS for each individual mail carrier.  Id.

6.   In October 2000, plaintiff was reassigned to the Westchester Processing and Distribution Center ("WP&DC").  Cover Tr., at 63.  Plaintiff was assigned to the Tour 1 shift, from approximately 11 p.m. to 7:30 a.m.  Id. at 63.  As a mail processor at the WP&DC, plaintiff was assigned to work in the Automation area of the facility, which includes, among other areas, the DBCS area of the facility. Cover Tr., at 54, 90.

7.   In addition to the DBCS machines, the Automation area also includes other machinery for processing the mail, such as optical character reader ("OCR") machines.  Cover Tr., at 90.

8.   Part-time flexible mail processors such as plaintiff, unlike regular employees, do not bid for a specific area of the Automation area of the facility.  Cover Tr., at 92-93; Waszmer Decl., Ex. D (Deposition of Grace Dellapi, Manager Distribution Operations ("Dellapi Tr.")), at 43-48.  Instead, they are assigned to areas on an as-needed basis.  Cover Tr., at 92-93; Dellapi Tr., at 43-48; Waszmer Decl., Ex. E (Deposition of Ilonka McPartland ("McPartland Tr.")), at 23-24; Bland Tr., at 55-58. Accordingly, both the schedules and the assignments of part-time flexible employees are subject to changes based on the volume of the mail at a given time.  Dellapi Tr., at 44-48; McPartland Tr., at 23-24; Bland Tr., 54-55.

9.   It is standard operating procedure for all mail processors assigned to the DBCS area to

finalize all mails processed at their assigned machines, prior to leaving the work area and ending their tour.  Cover Tr., at 66-68; Waszmer Decl., Ex. G (November 11, 2002 letter of warning).  The mail has been completely processed, or "finalized," when the mail that has been fed into a DBCS machine has been removed from the machine, placed into postal containers ("postcons"), and prepared for dispatch to post offices.  Cover Tr., at 66-68; Waszmer Decl., Ex. G.

### Discipline Issued to Plaintiff by the Postal Service in 2002 - 2003

November 11, 2002 Letter of Warning

10.    On Saturday, November 9, 2002, plaintiff was assigned to work at a DCBS machine. Cover Tr., at 158.  That day, he was instructed by his supervisors to stay at work until the mail at his machine had been finalized.  Cover Tr., at 157-59, 169-71; Waszmer Decl., Ex. G.

11.    Although plaintiff had not obtained authorization to leave prior to finalizing the mail, he left his DBCS machine at 7:15 a.m. to take his last fifteen-minute break, and then left the WP&DC at 7:30 a.m.   Cover Tr., at 161-62; Waszmer Decl., Ex. G.  When plaintiff left the facility, the mail had not been finalized because he and his partner at the machine had to "sweep the remaining mail out of the bins into the trays and drop the trays into the postcons for dispatch."  Cover Tr., at 163-62. Plaintiff did not ask another employee to cover the DBCS machine in his absence.  Id. at 162.

12.    On November 11, 2002, plaintiff was issued a disciplinary letter of warning ("LOW"). See Waszmer Decl., Ex. G.  The LOW charged that on November 9, 2002, plaintiff (1) failed to follow the instructions of his supervisor, and (2) left his assigned work area without permission.  Id. at 1. Specifically, the LOW stated:

It is standard operating procedure to all mail processors assigned to the DCBS

operation, to finalize all mails processed on their designated machines, prior to leaving the work area and prior to ending the tour.  All affected employees have been made aware to this operating procedure, and have been instructed to adhere to this operational requirement.  In addition, all employees have been made aware that a failure to meet this operating requirement, and ultimately, the failure to finalize all mails before leaving an assigned DBCS machine, delays processing and negatively impacts the automation operation.

Id.  The LOW further charged that on November 9, 2002, plaintiff left his assigned DBCS machine at 7:15 a.m. prior to finalizing all of the mail, without the permission of his supervisor.  Id. at 1. Plaintiff grieved the LOW through his union, and the LOW was settled in April 2003.   Waszmer Decl., Ex. H (April 11, 2003 Settlement).

13.    The LOW was the subject of a 2005 lawsuit filed by plaintiff against the Postal Service and the American Postal Workers Union, alleging "hybrid" claims under the Labor Management Relations Act of 1947, 29 U.S.C. § 185 ("LMRA"), and the Postal Reorganization Act ("PRA"), 38 U.S.C. § 1208(b).  See Waszmer Decl., Ex. I (Memorandum Decision and Order, Cover v. APWU, 05 Civ. 2430 (LMS)).

14.    In Cover v. APWU, plaintiff alleged, inter alia, that the Postal Service issued the LOW without just cause.  Waszmer Decl., Ex. I, at 21.  In granting the Postal Service's summary judgment motion, the court found that plaintiff's deposition testimony "unequivocally shows that he blatantly disobeyed the orders of his supervisors by leaving work early without permission."  Id. at 23; see also Waszmer Decl., Ex. J (Deposition of Wayne Cover, Cover v. APWU, 05 Civ. 2430 (LMS)), at 52-67. The court also found that plaintiff had offered no evidence to support his "denial" that he failed to follow his supervisor's instructions.  Waszmer Decl., Ex. I, at 23.

February 8, 2003 Notice of Seven-Day Suspension

15.    On January 27, 2003, plaintiff was assigned to work at a DBCS machine.  Cover Tr., at 197; Waszmer Decl., Ex. K (February 8, 2003 Notice of Seven-Day Suspension).

16.    On or about 1 a.m., Danielle Bland, Tour 1 Supervisor of Distribution Operations ("SDO"), observed plaintiff away from his assigned DBCS machine, talking with another employee. Cover Tr., at 198-99; Bland Tr., at 93-94.  SDO Bland instructed plaintiff to return to his assigned machine.  Cover Tr., at 199; Bland Tr., at 93-94.  Plaintiff did not immediately respond to SDO Bland's instruction, and instead engaged in an argument with SDO Bland about why he was away from his machine.  Waszmer Decl., Ex. K; Waszmer Decl., Ex. L (EEO Complaint); Cover Tr., at 198-99. SDO Bland again advised plaintiff to return to his machine, an instruction that plaintiff again ignored. Waszmer Decl., Ex. K.

17.    On February 8, 2003, a Notice of Seven-Day Suspension was issued to plaintiff. Waszmer Decl., Ex. K.  The Notice of Seven-Day Suspension charged that on January 27, 2003, plaintiff had (1) been absent from his assigned work area, and (2) failed to follow his supervisor's instructions.  Id.

18.    Plaintiff grieved the Notice of Seven-Day Suspension through his union, and the grievance went to arbitration.  See Waszmer Decl., Ex. M (December 15, 2004 Arbitration Decision and Award).  The arbitrator found that plaintiff was approximately 50 feet from his assigned machine, and when SDO Bland told him to return to his machine, "she had to repeat her instructions numerous times because the grievant kept ignoring her request."  Id. at 2.  The arbitrator further found that "[t]here may have been a reason or reasons for the grievant to be out of his area, but when told to

return to his machine he decided to argue the point rather than return." <u>Id.</u> at 3.   The arbitrator therefore upheld five days of the seven-day suspension issued, finding that "the Service did meet its burden to show that the grievant did fail to follow his supervisor's instructions." <u>Id.</u> at 4.   The arbitrator further found that "[i]f there was harassment in this case, it was the grievant's relentless questioning of his supervisor's legitimate order, not her alleged harassment of him." <u>Id.</u>

<u>May 22, 2003 Notice of Fourteen-Day Suspension</u>

19.   On May 16, 2003, plaintiff was again assigned to work at a DBCS machine.  Cover Tr., at 217-18.  At approximately 6:00 a.m., SDO Bland observed that there were four trays of mail at plaintiff's machine that had not been dispatched. <u>Id.</u>; Bland Tr., at 99; Waszmer Decl., Ex. N (Notice of Fourteen-Day Suspension).  Plaintiff told SDO Bland that the trays of mail were late-arriving mail, <u>i.e.</u>, delayed mail.  Cover Tr., 218-19; Bland Tr., at 107-08.

20.   SDO Bland determined that the trays of mail at plaintiff's assigned machine were not delayed mail, rather were "reject mail," <u>i.e.</u>, mail that had already been fed into the DBCS machine and rejected from the machine, because of the "texture" of the mail.  Bland Tr., at 107-08.  Mail that is late-arriving that has not been fed into the machine is "very neat" and stacked in a tray. <u>Id.</u> at 108.  In contrast, "[m]ail that has been through the machine and is reject[ed], some of the mail is mail that comes from jams, so it's going to be crumpled up, maybe tor[n]." <u>Id.</u>

21.   On May 17, 2003, SDO Bland met with plaintiff for a pre-disciplinary interview regarding the events of May 16, 2003.  Cover Tr., at 222; Waszmer Decl., Ex. O (CA-1 Claim for Traumatic Injury).  A union representative, Arlene McDuffie, was present on behalf of plaintiff. <u>Id.</u> During the interview, plaintiff became agitated and stated that he was experiencing a headache and that

his heart rate had accelerated.  Id.  SDO Bland terminated the interview.  Id.  Grace Dellapi, the lead

Manager of Distribution Operations ("MDO") for Tour 1, instructed another MDO, Donald Burke,

pursuant to facility policy, to take plaintiff to the hospital to be examined.  Dellapi Tr., at 75-77; see

also Cover Tr., at 223.  Plaintiff was advised by the emergency room physician to "take the next 48

hours off."  Cover Tr., at 223.

22.    On May 22, 2003, a notice of fourteen-day suspension was issued to plaintiff.  Waszmer

Decl., Ex. N (Notice of Fourteen-Day Suspension).  The Notice of Fourteen Day Suspension charged

that plaintiff failed to perform his assigned duties when he did not "dispatch four trays of 'reject'

mail...in a timely manner."  Id.  The notice states that, "The Standard Operating Procedure, as it applies

to the processing of all 'reject/post office box/window' mail requires that this mail be sorted according

to destination, and dispatched on the scheduled trip at 0545."  Id.  The notice further stated that

plaintiff "failed to adhere to this standard operation procedure," in that at 6:00 a.m., the mail had not

yet been finalized and dispatched."  Id.

23.    Plaintiff grieved the Notice of Fourteen-Day Suspension through his union, and the

grievance went to arbitration.  See Waszmer Decl., Ex. P (July 26, 2005 Arbitration Decision and

Award).  The arbitrator denied plaintiff's grievance, finding that the Postal Service had just cause to

discipline plaintiff.  Id. at 6.  The arbitrator found that SDO Bland credibly testified that the mail at

plaintiff's assigned machine was reject mail.  Id. at 5.  The arbitrator also found that it was undisputed

that Mahopac Post Office, the facility receiving mail from plaintiff's assigned machine, always

receives reject mail to be hand-sorted and had not received any reject mail on May 16, 2003.  Id.  The

arbitrator further found that plaintiff had not dispatched carrier route mail on-time.  Id.  Accordingly,

"as timely dispatch of the carrier routes is critical to Postal Service operations and efficiency," and plaintiff was aware of these time constraints, the Postal Service had just cause to issue plaintiff the discipline for failure to perform his assigned duties.  Id.

24.    The arbitrator concluded that, based on the LOW and the prior suspension issued to plaintiff, the Notice of Fourteen-Day Suspension was progressive, not punitive in nature.  Waszmer Decl., Ex. P, at 6.  As plaintiff's Notice of Seven-Day Suspension had been reduced to five days, the Postal Service unilaterally reduced the Notice of Fourteen-Day Suspension to a seven-day suspension, which the arbitrator found to be "clearly progressive in nature."  Id.  The arbitrator thus denied plaintiff's grievance.

**Plaintiff's Request for Work Restrictions Based on Alleged Anxiety**

Limited Duty and Light Duty Restrictions Based on Employee Medical Condition

25.    At the Postal Service's WP&DC, employees seeking work-related restrictions or limitations based on a medical condition may either seek (1) limited duty or (2) light duty.  Waszmer Decl., Ex. Q (Deposition of Keith Fischer, Senior Plant Manager ("Fischer Tr.")), at 27-28; and Ex. R (Deposition of Constance Alfinez ("Alfinez Tr.")), at 14-17.

26.    Restrictions based on limited duty status are only available for injuries incurred as a result of on-the-job incidents.  Alfinez Tr., at 16-17.  The United States Department of Labor ("DOL") determines whether a Postal Service employee is eligible for limited duty status as a result of a work-related injury or condition.  Alfinez Tr., at 17-18; see generally Alenski v. Potter, No. CV-03-2179, 2005 WL 1309043, at *2-4 (E.D.N.Y. May 18, 2005) (discussing limited duty and light duty status); see also 5 U.S.C. § 8124 (DOL processes and determines injury compensation claims).

9

27.    Light duty status is available to an employee who has a medical or personal condition that is not related to his employment with the Postal Service, which prevents the employee from performing his duties.  Alfinez Tr., at 15-16; <u>see</u> <u>also</u> Fischer Tr., at 28.  At the WP&DC, requests for light duty must be submitted in writing to the Senior Plant Manager, Keith Fischer, along with a completed Employee Work Limitation Form.  Waszmer Decl., Ex. S (March 29, 2004 Memorandum); Fischer Tr., at 28-32; Dellapi Tr., at 84.  Light duty status is approved only for thirty-day increments. Waszmer, Ex. S; Alfinez Tr., at 158-60.

<u>Plaintiff's Requests for Work Restrictions Based on Alleged Anxiety</u>

28.    As a result of the May 17, 2003 pre-disciplinary interview with SDO Bland, plaintiff filed a claim for injury compensation with DOL based on his purported anxiety condition.  Waszmer Decl., Ex. M.  In the claim, plaintiff asserted that he had suffered from "tension headaches" and "heart palpitations" due to "harassment and discrimination" by SDO Bland, <u>id.</u>, which the Postal Service opposed.  Waszmer Decl., Ex. T.

29.    While plaintiff's claim for injury compensation was pending with DOL, the Postal Service assigned plaintiff to work in the OCR area of the Automation floor.  McPartland Tr., at 25. Although SDO Bland supervised the DBCS area, Bland Tr., at 22, she was still assigned to keep track of plaintiff's attendance and other administrative matters after plaintiff was assigned to the OCR area, which was assigned to another supervisor, Jack Corso.  Waszmer Decl., Ex. U (Deposition of Jack Corso ("Corso Tr.").

30.    As of May 2003, the Postal Service had also agreed, pursuant to a request in April 2003 from plaintiff's primary care physician, to limit plaintiff's daily schedule to six hours a day, with two

consecutive days off.  Waszmer Decl., Ex. V (April 11, 2003 Note from Alan K. Dockeray);
McPartland Tr., at 28-31; Bland Tr., at 112.

31.    The Postal Service had also referred plaintiff to the Employee Assistance Program
("EAP") for personal counseling with a certified social worker, Janice Parks-Whitman.  See Waszmer
Decl., Ex. W (Letter from Janice Parks Whitman), and Ex. X (EAP referral form).  While plaintiff was
in EAP counseling, his counselor found that he was "functioning," and was not "incapacitated" or
"immobilized" by any psychological condition.  Waszmer Decl., Ex. Y (Deposition of Janice Parks-
Whitman ("Parks-Whitman Tr."), at 53-56, 74.

32.    During the period of time from May 2003 through April 2004, plaintiff submitted two
one-page handwritten notes to the Postal Service from his primary care physician, Alan K. Dockeray,
M.D., stating that plaintiff suffered from "anxiety" and requesting that plaintiff be continued on the
limited schedule and that he not work in the DBCS area.  See Waszmer Decl., Ex. Z (May 19, 2003
Note from Alan K. Dockeray), and Ex. AA (April 20, 2004 Note from Alan K. Dockeray).  Neither
of these notes state that plaintiff is not able to perform the functions necessary to operate a DBCS
machine.  Id.

33.    In March 2004, the Postal Service was informed that DOL had denied plaintiff's claim
for injury compensation, finding that "[d]isagreement with or dislike of a management action or with
the manner in which a supervisor exercises his supervisory discretion is not compensable, and an
emotional reaction due to such disagreement/dislike is considered self-generated and is not
compensable."  See Waszmer Decl., Ex. BB.

34.    Plaintiff was advised by the In-Plant Support Office of the WP&DC that if he sought to

continue any restrictions or limitations with regard to his assignment based on a medical condition, he would need to submit a request for "light duty."  Alfinez Tr., at 41.

35.    By letter dated July 2, 2004, entitled "LIMITED DUTY STATUS," the Postal Service notified plaintiff that "management has been advised by the US Department of Labor that your claim for injury compensation has been denied."  Waszmer Decl., Ex. CC.  The letter further stated that if plaintiff "[i]f you are not fit for full duty, and wish to remain in a duty status, you are required to apply for light duty." Id.

36.    In July 2004, plaintiff submitted a one-page handwritten note, dated July 15, 2004, from his primary care physician, indicating that plaintiff "has never requested, nor have I complete[d] forms related for light duty requests."  Waszmer Decl., Ex. DD (July 15, 2004 Alan K. Dockeray note).  The note also stated that plaintiff "has been found to be "Fit for Full Duty." Id.  Enclosed with the note was a completed Employee Work Limitation Form, reflecting that plaintiff had no physical restrictions. Waszmer Decl., Ex. DD (July 15, 2004 Alan K. Dockeray note).

37.    By letter dated July 16, 2004, the Postal Service notified plaintiff that "after a review of the medical information provided by your personal physician, you are medically Fit For Full Duty (FFD)."  Waszmer Decl., Ex. EE.  Plaintiff was instructed that he "may resume all of your normally assigned duties effective July 16, 2004," and that he should continue to report to his tour. Id.

38.    Plaintiff was also advised by SDO Ilonka McPartland in July 2004 that because his injury compensation claim had been denied, he would need to submit a light duty request, or he would be deemed fit to work in any area of the Automation floor, including the DBCS area.  McPartland Tr., 53-57, 65-66; Cover Tr., at 238-39.

39.   Plaintiff did not submit a request for light duty to the Senior Plant Manager.  Cover Tr., at 252.  The only requests for any restrict or limitation made by plaintiff to the Postal Service were the handwritten notes from Dr. Dockeray.  Cover Tr., at 238-39.

40.   By letter dated July 30, 2004, from In-Plant Support, SDO McPartland and Tour 1 supervisors were notified that plaintiff was "fit for full duty" and could "resume all of his normally assigned duties of a Part Time Flexible Mail Processor," including DBCS operations.  Waszmer Decl., Ex. FF.

41.   On or about August 2, 2004, plaintiff was advised that he would be assigned to the DBCS area.  McPartland Tr., at 47-48; Cover Tr., at 246.  At that time, Tour 1 was understaffed, and the supervisor had been utilizing overtime to cover the machines, as well as shutting down certain machines.  Id.  Plaintiff was advised by In-Plant Support that if he refused to work in any area he was assigned to by his supervisor, he would be sent home, and disciplinary action would be taken.  Waszmer Decl., Ex. GG.  Plaintiff was also advised that he needed to submit a request for light duty for any restrictions he sought.  Alfinez Tr., at 124-25.  Plaintiff refused to return to work in the area.  Alfinez Tr., at 72; Dellapi Tr., at 83.

42.   On August 5, 2004, plaintiff stated he could not work in the DBCS area, and he was not permitted to clock-in for Tour 1 duty until he submitted and received approval for a light duty request.  McPartland Tr., 53-55; Dellapi Tr., 83-84.

43.   On August 6, 2004, instead of a light duty request, plaintiff submitted a one-page handwritten note from Dr. Dockeray, which stated that "Mr. Cover's situation has not changed during the 1.5 years interim" and that "the anxiety syn complex is still under treatment."  Waszmer Decl., Ex.

HH.  The note further states that "all work restrictions should be continued until further notification."

Id.  The note did not make any reference to plaintiff's assignment to the DBCS area, nor did it make

a request for light duty status.  Id.

44.   Plaintiff submitted no light duty request to the Postal Service, nor did he contact In-Plant

Support regarding light duty.  Alfinez Tr., at 131-138, 157.

45.   Plaintiff has not clocked-in to work since August 5, 2004.  Waszmer Decl., Exs. II, JJ,

KK.

Dated:   New York, New York
         January 26, 2007                           Respectfully submitted,

                                                    MICHAEL J. GARCIA
                                                    United States Attorney
                                                    Southern District of New York
                                                    Attorney for Defendant John E. Potter

                                        By:     /s/ Wendy H. Waszmer
                                                    WENDY H. WASZMER (WW5069)
                                                    Assistant United States Attorney
                                                    86 Chambers Street
                                                    New York, New York 10007
                                                    Tel.:  (212) 637-2729
                                                    Fax.:  (212) 637-2717