UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
WAYNE COVER,

                                    Plaintiff,
                                                            05 CIV. 7039 (GAY)
            - against -

JOHN E. POTTER, Postmaster General,
United States Postal Service,                               **DECISION
                                                            & ORDER**

                                    Defendant.
-----------------------------------------------------------------x


        Plaintiff Wayne Cover ("plaintiff") is a former part-time flexible mail processor with

the Postal Service.  Plaintiff brings this action pursuant to the Civil Rights Act of 1964,

42 U.S.C. §§ 2000e et seq., and the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq.

("Rehabilitation Act").  Plaintiff's complaint raised numerous allegations of discrimination

on the basis of gender, race, and disability, as well as claims of retaliation against the

Postal Service ("defendant").  A jury trial commenced on February 11, 2008.  The jury

determined that defendant Post Office retaliated against plaintiff when it disciplined him

and suspended him without pay.  The jury awarded plaintiff $100,000 in compensatory

damages.

        Presently before this Court are defendant's motions for judgment as a matter of

law pursuant to Fed. R. Civ. P. 50, or, in the alternative, a new trial pursuant to Fed. R.

Civ. P. 59(a), and plaintiff's application for attorney's fees and costs. In the event the

Court declines to vacate the jury's verdict, the Postal Service also moves for remittitur of

the jury's award of $100,000 in compensatory damages pursuant to Fed. R. Civ. P.

59(e).

**BACKGROUND**

Plaintiff became a part-time flexible mail processor for the Postal Service in November of 1997. Plaintiff was initially assigned to the White Plains Post Office. As a part-time flexible mail processor, plaintiff was assigned to work on a delivery bar code sorter ("DBCS") machine. In October 2000, plaintiff was reassigned to the Westchester Processing and Distribution Center ("WPDC"). Plaintiff was assigned to the Tour 1 shirt, from approximately 11:00 p.m. until 7:30 a.m. As a mail processor at the WPDC, plaintiff was assigned to work in the Automation area of the facility, which includes the DBCS area of the facility as well as other areas such as the optical character reader machine area. Plaintiff was assigned to the Automation area of WPDC until the last day he "clocked-in" for work, which was August 5, 2004.

During his time in the Automation area of the WPDC, plaintiff alleged that: (1) on October 2, 2002, his request to leave work prior to completing assigned tasks was denied; (2) from October 2, 2002, through December 7, 2003 he was subject to incidents of harassment by his supervisor, such as falsely accusing him of being late from his break and insisting that he tie his shoe laces standing up; (3) on November 11, 2002, he was issued a letter of warning; (4) on February 8, 2003, he was issued a Notice of Seven-Day Suspension; (5) on May 9, 2003, his schedule was changed; (6) on May 22, 2003 he was issued a Notice of Fourteen-Day Suspension; (7) on August 5, 2004, he was assigned to work on a DBCS machine, despite his medical condition; and (8) on August 7, 2004, he was constructively discharged when he refused to report to work on a DBCS machine, and was therefore not allowed to "clock-in."

Plaintiff also claimed that some or all of the above actions were taken by

2

defendant in retaliation for an EEO complaint of discrimination made against defendant and defendant's employees. The complaint process was initiated on October 3, 2002 and finally resolved in defendant's favor on May 6, 2005.

**DISCUSSION**

I.      Standard for Judgment as a Matter of Law

Defendant moves for judgment as a matter of law because the evidence presented at trial failed to support plaintiff's retaliation claim and the punitive damages award. Pursuant to Rule 50 of the Federal Rules of Civil Procedure, "a court should render judgment as a matter of law when 'a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue.'" Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 149 (2000), quoting Fed. Rule Civ. Proc. 50(1).

"[I]n entertaining a motion for judgment as a matter of law, the court should review all of the evidence in the record." Reeves, 530 U.S. at 151. "In doing so, however, the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Id.

"Whether judgment as a matter of law is appropriate in any particular case will depend on a number of factors. Those include the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law." Id., at 148-49.

II.      Standard for Granting a New Trial

In the alternative, defendant also moves for a new trial because the verdict for

plaintiff on his retaliation claim was against the weight of the evidence.  Rule 59 of the

Federal Rules of Civil Procedure provides, in pertinent part:

> A new trial may be granted to ... any of the parties and on all or part of the
> issues (1) in an action in which there has been a trial by jury, for any of the
> reasons for which new trials have heretofore been granted in actions at
> law in the courts of the United States ....

Rule 59's threshold for granting a new trial is lower than Rule 50's threshold for granting

judgment as a matter of law because the trial judge "is free to weigh the evidence

himself and need not view it in the light most favorable to the verdict winner."  U.S. v.

Landau, 155 F.3d 93, 104 (2d Cir. 1998)(internal quotation and citation omitted).  Thus,

"a motion for a new trial may be granted even if there is substantial evidence to support

the jury's verdict."  Caruolo v. John Crane, Inc., 226 F.3d 46, 54 (2d Cir. 2000).

However, the trial court "ordinarily should not grant a new trial unless it is convinced that

the jury has reached a seriously erroneous result or that the verdict is a miscarriage of

justice."  Hygh v. Jacobs, 961 F.2d 359, 365 (2d Cir. 1992) (internal quotation omitted).


III.     Retaliation

Title VII of the Civil Rights Act of 1964 provides that "[i]t shall be an unlawful

employment practice for an employer to discriminate against any of his employees ...

because [the employee] has opposed any practice made an unlawful employment

practice by" Title VII, 42 U.S.C. § 2000e-3(a).  In order to establish a *prima facie* case of

retaliation pursuant to Title VII, a plaintiff must show: "(1) that [he] was engaged in

protected activity by opposing a practice made unlawful by Title VII; (2) that the employer was aware of that activity; (3) that [he] suffered adverse employment action; and (4) that there was a causal connection between the protected activity and the adverse action." Galdieri-Ambrosini v. Nat'l Realty & Dev., Corp., 136 F.3d 276, 292 (2d Cir. 1998), citing Reed v. A. W. Lawrence & Co., 95 F.3d 1170, 1178 (2d Cir. 1996). If a plaintiff establishes his *prima facie* case of retaliation, defendant must then offer "a legitimate, non-discriminatory reason for the adverse action." Slattery v. Swiss Reinsurance America Corp., 248 F.3d 87, 95 (2d Cir. 2001). Once defendant proffers this reason, plaintiff must then show that the proffered reason is pretextual. See id.

With regards to the fourth prong of a plaintiff's *prima facie* case of retaliation, "temporal proximity can demonstrate a causal nexus." Id., citing Manoharan v. Columbia Univ., 842 F.2d 590, 593 (2d Cir. 1988). Proof of causation may be shown either: "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." Gordon v. New York City Bd. Of Educ., 232 F.3d 111, 117 (2d Cir. 2000).

"The lack of knowledge on the part of particular individual agents is admissible as some evidence of a lack of a causal connection." Gordon, 232 F.3d at 117 (emphasis omitted). However, retaliation can be found where the agent denies knowledge of a plaintiff's protected activity, "so long as the jury finds that the *circumstances* evidence knowledge of the protected activities." Gordon, 232 F.3d at 117 (emphasis added). A jury may choose to disbelieve witnesses who deny that events essential to a plaintiff's

case occurred, but the plaintiff cannot prevail on this disbelief alone. See Goldhirsh

Group, Inc. v. Alpert, 107 F.3d 105, 109 (2d Cir. 1997). "There must be some affirmative

evidence that the event occurred." Goldhirsh Group, Inc., 107 F.3d at 109 (internal

quotations and citations omitted). "[T]he discredited testimony is not considered a

sufficient basis for drawing a contrary conclusion." Bose Corp. v. Consumers Union,

Inc., 466 U.S. 485, 512 (1984). In other words, "the factfinder must *believe* the plaintiff's

explanation of [retaliation]." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133,

147 (2000) (internal quotations and citations omitted)(emphasis in original).

In addition, a plaintiff "need not disprove a defendant's proffered rationale for its

adverse actions." Gordon, 232 F.3d at 117, citing Fields v. NYS Office of Mental

Retardation & Development Disabilities, 115 F.3d 116, 120 (2d Cir. 1997). Nevertheless,

a plaintiff must prove "by a preponderance of the evidence that the defendant

intentionally . . . retaliated against the plaintiff for engaging in protected activity."

Cosgrove v. Sears, Roebuck & Co., 9 F.3d 1033, 1039 (2d Cir. 1993) (internal quotations

omitted).

On the other hand, "[w]here timing is the only basis for a claim of retaliation, and

the gradual adverse job actions began well before the plaintiff had ever engaged in any

protected activity, an inference of retaliation does not arise." Slattery, 248 F.3d at 95.

"Employers need not suspend previously planned transfers upon discovering that a Title

VII suit has been filed, and their proceeding along lines previously contemplated, thought

not yet definitively determined, is no evidence whatever of causality." Clark Cty Sch.

Dist. v. Breeden, 532 U.S. 268, 272 (2001). Where the record "conclusively reveal[s]

some other, nondiscriminatory reason for the employer's decision, or if the plaintiff

created only a weak issue of fact as to whether the employer's reason was untrue," an employer is entitled to judgment as a matter of law.  Reeves, 530 U.S. at 148.

Here, defendant argues that the evidence at trial plainly demonstrated legitimate, non-discriminatory reasons for the issuance of each of the three disciplines, which plaintiff failed to rebut.  Specifically, defendant claims that the evidence clearly established that plaintiff was disciplined because he failed to follow the instructions of his supervisors and discharge his duties as a mail processor.  However, the record shows that plaintiff not only established his prima facie case, but offered sufficient evidence to rebut defendant's proffered non-discriminatory reasons.  In addition to the temporal proximity of the discipline to the fourteen-day suspension, Ms. Cruz testified that plaintiff was singled out for discipline even though she and the plaintiff were both partners on the same machine engaged in the same conduct.  The jury was permitted to credit this testimony; and find defendant's proffered reason for the discipline was pretextual and the real reason for the discipline was retaliation.

Accordingly, as plaintiff has established his retaliation claim with a legally sufficient evidentiary basis; and because the verdict in his favor was not against the weight of the evidence, defendant's motion for judgment as a matter of law is denied.  The motion for a new trial is also denied.  The verdict was not a seriously erroneous result or a miscarriage of justice.

IV.    Remittitur of the Jury's $100,000 Compensatory Damage Award

"A remittitur, in effect, is a statement by the court that it is shocked by the jury's

award of damages." Ismail v. Cohen, 899 F.2d 183, 186 (2d Cir. 1990).  A trial judge

should not unconditionally reduce the amount of damages awarded by verdict, for to do

so impermissibly encroaches upon the litigant's constitutional right to a jury.  See 11C.

Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE § 2815, at 99 (2008). In

evaluating the reasonableness of a non-economic damages award in discrimination

suits, courts often examine "the duration, extent and consequences of mental anguish

suffered by [the] plaintiff" to determine whether the case is a "garden variety" mental

anguish claim, in which awards are typically between $5,000 and $30,000.  Kinneary v.

City of New York, 536 F. Supp. 2d 326, 331 (S.D.N.Y. 2008) (internal citation omitted).

Emotional damages exceeding this amount generally involve egregious conduct, such as

deliberate or highly offensive conduct, or situations where the plaintiff's emotional

distress is so severe that he exhibits physical manifestations and/or medical treatment

substantiated by expert testimony.  See id.; McInnis v. Town of Weston, 458 F. Supp. 2d

7, 10 (D. Conn. 2006).

 While the emotional damages plaintiff asserts certainly cannot be characterized

as severe, neither are they "garden variety."  Plaintiff saw a licensed social worker, Ms.

Parks-Whitman, 18-23 times and had telephone consultations with her 8-10 times

between November 2002 and September 2004.  In December 2002 she diagnosed him

with generalized anxiety and referred him to a medical doctor with complaints of

headaches and stomach problems.  Ms. Whitman's diagnosis was also confirmed by the

medical doctor, Dr. Dockery.

 Defendant argues that much of the anxiety and symptoms experienced by plaintiff

cannot be linked specifically to the disciplinary events at issue in the case.  However, it is

undisputed that much of the counseling and alleged symptoms took place during the period of the retaliatory action.  In addition, plaintiff testified before the jury that he experienced anxiety, depression, and insomnia due to worry about whether or not he was going to be suspended.  It is also well documented by both plaintiff and defendant that he visited the hospital and was advised to take two days off of work in connection with the fourteen-day suspension.  This evidence is sufficient to justify the jury award of compensatory damages for retaliation.

V.    Attorney's Fees and Costs

  A.    Prevailing Party

Congress has authorized courts to use their discretion in awarding attorney's fees to prevailing litigants in Title VII cases.  See E.E.O.C. v. Safeguard Chem. Corp., 166 F. Supp. 2d 810, 814 (S.D.N.Y. 2001).  Section 706(k) of Title VII of the Civil Rights Act of 1964 provides:

> In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee (including expert fees) as part of the costs ....

42 U.S.C. § 2000e-5(k).  One is a 'prevailing party' "if he 'obtains at least some relief on the merits.'" Knoeffler v. Town of Mamakating, 126 F. Supp.2d 305, 310 (S.D.N.Y. 2000), quoting Farrar v. Hobby, 506 U.S. 103, 111 (1992).  In order to prevail, "'[a] party need not succeed on every issue raised, . . . nor even the most crucial one.'" Id., at 310, quoting LaRouche v. Kezer, 20 F.3d 68, 71 (2d Cir. 1994).  "The party merely has to prevail on a 'significant claim.'" Id., at 310-11, quoting LaRouche, 20 F.3d at 71.  In fact, "[t]he focus of the inquiry rests upon the 'material alteration of the legal relationship of the

9

parties.'" Id., quoting Farrar, 506 U.S. at 111; see also LeBlanc-Sternberg v. Fletcher, et al., 143 F.3d 748, 757 (2d Cir. 1998).

Here, although plaintiff prevailed only on his retaliation claim, he is the prevailing party for the purpose of awarding attorneys' fees precisely because of the material change that his success effected in the relationship between the parties. Accordingly, the Court will now proceed to consider the appropriate amount of fees to award.

B.      Reasonable Attorneys' Fees

In the Second Circuit, the "presumptively reasonable fee" method, in which the amount of time reasonably spent by counsel on the case is multiplied by a reasonable hourly rate, has generally been employed to calculate reasonable attorneys' fees for the prevailing claimant. See Cruz v. Local Union No. 3 of the Int'l. Bhd. of Elec. Workers, 34 F.3d 1148, 1159 (2d Cir. 1994); Gierlinger v. Gleason, 160 F.3d 858, 876 (2d Cir. 1998); Arbor Hill Concerned Citizen's Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 183 (2d Cir. 2008) (substituting the terminology "presumptively reasonable fee" for the older "lodestar" terminology). A reasonable hourly rate must be in line with the rates "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Cruz, 34 F.3d at 1159; Gierlinger, 160 F.3d at 882. Additionally, the amount of time expended must be adequately supported by contemporaneous time records that specify relevant dates, time spent, and work done. New York Ass'n for Retarded Children v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983). "[The p]laintiff has the burden of proving the reasonableness of the requested hourly rate." Sowemimo v. D.A.O.R. Security, Inc., No. 97 Civ. 1083, 2000 WL 890229, at *3

(S.D.N.Y. Jun. 30, 2000).

In its determination of a fee award, the Court may also consider the following factors in adjusting the "presumptively reasonable fee" figure: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount of work involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. Hensley v. Eckerhart, 461 U.S. 424, 430 n. 3 (1983). Ideally, the plaintiff also submits to the Court,

> affidavits from attorneys with similar qualifications stating the precise fees they have received for comparable work or stating the affiant's personal knowledge of specific rates charged by other lawyers [in] similar litigation, data about fees awarded in anomalous cases and evidence of the fee applicant's rates during the relevant time period.

Bridges v. Eastman Kodak Co., 1996 WL 47304, at *11 (S.D.N.Y. Feb. 6, 1996) (internal citations and quotations omitted).

In some cases, the "presumptively reasonable fee" figure may be subject to an upward or downward departure. See Grant, 973 F.2d at 101; Hensley, 461 U.S. at 434. "[This] determination lies largely within the discretion of the district court." Grant, 973 F.2d at 101. Such a departure depends upon "whether the plaintiff's unsuccessful claims were related to those on which she prevailed," and "'whether the plaintiff achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for

making a fee award.'" Knoeffler, 126 F. Supp.2d at 318, quoting Hensley, 461 U.S. at

434.

1.     Reasonable Hourly Rate

Here, plaintiff's counsel requests an hourly rate of $325 per hour for Mr. Nuwesra.

While defendant points out that this rate is "at the high-end of the range recognized by

courts in this District for civil rights litigators" it "does not contest this hourly rate." The

Court also agrees that this rate is within the recognized range for rates prevailing in the

community for similar services by lawyers of reasonably comparable skill, experience,

and reputation.

2.     Billed Hours

Defendant further argues that counsel engaged in excessive billing, and that

many of counsel's billing entries are too vague to accurately determine whether or not

the claimed hours were reasonably necessary. The documentation supporting the hours

expended by plaintiff's counsel on this matter consists of an itemized billing summary

using information drawn from contemporaneously-kept records, setting forth counsel's

daily time records with the dates, descriptions of the work performed and the hours

spent.

While some of the individual entries in counsel's records appear wanting in some

specificity and detail, the Court finds that such entries, when considered in the context of

the entire billing summary, generally establish the subject matter of the work performed

by counsel. See generally, Bridges v. Eastman Kodak, 1996 WL 47304, at *4 (S.D.N.Y.

Feb. 6, 1996) (declining to reduce the presumptively reasonable fee amount, or lodestar

amount, notwithstanding occasional vague descriptions of work, as the records, overall, indicated reasonableness of each task and time expended).

As to the amount of time expended by plaintiff's counsel, this Court is reluctant to undertake an *ex post facto* probe into counsel's billing practices, in light of decisions in this jurisdiction admonishing courts from "becom[ing] enmeshed in a meticulous analysis of every detailed facet of the professional representation." Bridges, 1996 WL 47304, at *4, quoting Seigal v. Merrick, 619 F.2d 160, 164 n. 8 (2d Cir. 1980). However, many of counsel's billing entries are clearly excessive given counsel's professed level of expertise. In particular, counsel seeks 42.25 hours for the instant six page post trial motion. Counsel also seeks 87.25 hours, or $28,356, for plaintiff's summary judgment motion. These amounts are clearly outside of the range for similar matters litigated by counsel of similar experience in the district and are representative of counsel's billing practices throughout this action. See Weingarten v. Optima Communications Systems, Inc., 544 F. Supp. 2d 193 (S.D.N.Y. 2008) (internal citation omitted).

Plaintiff seeks a total of $131,868.76 for 405.75 hours of work. Mr. Nuwesra is billing his services at the rate of $325 an hour based on his level of experience and expertise. This rate "assumes a certain level of expertise in discrimination law." Id. at 198. Accordingly, the Court finds that the hours billed by counsel possessing the claimed experience and expertise are excessive, and will reduce the overall fee award by ten percent (10%).

### 3. Reduction for Degree of Success

Defendant also claims plaintiff's attorney fees should be reduced at least forty

percent (40%) for his lack of success. "The Supreme Court has consistently stressed the importance of the degree of the plaintiff's success in the litigation as a factor affecting the size of the fee to be awarded." Kassim v. City of Schenectady, 415 F.3d 246, 253 (2d Cir. 2005). In cases involving distinctly different claims for relief that are based on different facts and legal theories, counsel's work on one claim will be unrelated to his work on another claim. Id. For this reason, no fee may be awarded for work expended on the unsuccessful claim. Id. (internal citation omitted).

In the instant case, plaintiff's failed claims of disability discrimination and constructive discharge were not "inextricably intertwined" with the successful claim of retaliation based on race and gender. See Reed v. A.W. Lawrence & Co., 95 F.3d 1170, 1183 (2d Cir. 1996). In pursuing the failed claims, plaintiff's counsel focused on facts and events that occurred more than a year after the last alleged incident of retaliation. At trial and in his motions, counsel spent considerable time presenting evidence that had no bearing on the successful claim and dealt specifically with issues such as defendant's light duty and limited duty policies. In fact, plaintiff continues, at this late date, to pursue his failed constructive discharge claim by asking the Court for back pay and reinstatement.

Plaintiff's billing records do not detail how much time was spent on each claim or theory of recovery. Plaintiff's assertion in his reply that the bill was already discounted to reflect work on the unsuccessful claim is unsupported. The submitted billing records do not indicate such a discount.

Accordingly, the Court, being intimately familiar with the contours of this case, finds that plaintiff's counsel spent a considerable amount of his billable time on the

distinct failed claims, and will reduce the overall fee award by forty percent (40%).

C.    Costs

Plaintiff's counsel also seek to recover costs incurred in the course of this lawsuit. "It is well-settled that 'attorney's fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." Marisol A. ex rel. Forbes v. Giuliani, 111 F. Supp. 2d 381, 401 (S.D.N.Y. 2000) quoting LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir. 1998) (internal quotations omitted).  Out-of-pocket costs that are normally charged to clients are generally compensable under Section 1988.  See Rodriguez ex rel. Kelly v. McLoughlin, 84 F. Supp.2d 417, 426 (S.D.N.Y. 1999).  However, plaintiff's counsel must substantiate any claims for reimbursement. Gissinger v. Young, Nos. CV-04-0534, CV-04-5406, 2007 WL 2228153, at *8 (S.D.N.Y. July 31, 2007).  Here, plaintiff's submits some receipts with respect to costs.  These receipts are appended as exhibit 5 to plaintiffs reply affirmation of July 14, 2008.  While plaintiff maintains that he incurred costs in the amount of $5,594.31, a deferential reading of the receipts (some barely legible) accounts for only $4,872.31.  Without additional documentation, this court cannot determine if the additional claimed costs are in fact reimbursable.

Accordingly, the Court awards plaintiff costs in the amount of $4,872.31.

VI.    Reinstatement, Back Pay, and Interest

Plaintiff prevailed on his retaliation claim, for which the jury awarded him $100,000

in compensation for his damages.  Plaintiff cannot show that he lost any pay or benefits as a result of the disciplinary actions which were the subject of his retaliation claim. Plaintiff did not prevail on his constructive discharge claim.  As such, he is not entitled to back pay, reinstatement, or any interest on back pay.

Plaintiff's argument that defendant's progressive discipline system entitles him to back pay is unpersuasive.  The record does not support his allegation that he was terminated as a result of this discipline.  Rather, the record reflects that plaintiff was ultimately terminated for failing to report for work to his assigned work area. Accordingly, this Court declines to award any back pay or interest on back pay.  The Court also declines to order a hearing to determine eligibility for reinstatement.

**CONCLUSION**

Defendant's motions for judgment as a matter of law, or in the alternative, a new trial, are denied.  Defendant's motion for remittitur is denied.  Plaintiff is awarded attorney's fees in the amount of $65,934.38, reflecting a forty percent (40%) reduction for degree of success and a ten percent (10%) reduction for excessively billed hours. The Court also awards costs in the amount of $4,872.31. The total award for fees and costs amounts to **$70,806.69**.

The Clerk of the Court shall enter judgment accordingly.

The Clerk of the Court shall enter judgment accordingly.


SO ORDERED.


Dated:       August 29th, 2008
               White Plains, New York

GEORGE A. YANTHIS
UNITED STATES MAGISTRATE JUDGE